

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00370-CR

**BILLY WAYNE LEWIS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 82nd District Court
### Falls County, Texas
### Trial Court No. 10287

## MEMORANDUM OPINION

After the trial court overruled his motion to suppress, Billy Wayne Lewis, Appellant, entered a plea of no contest to the offense of possession of a controlled substance, methamphetamine, over four grams and under 200 grams. *See* TEX. HEALTH AND SAFETY CODE ANN. § 481.115 (d) (West). In accordance with a plea agreement, the trial court sentenced Appellant to confinement for ten years. The trial court certified Appellant's right to appeal the ruling on the motion to suppress. We affirm.

The record of the hearing on Appellant's motion to suppress reveals that the trial court heard the following relevant evidence.

Officer John Myers was employed as a police officer for the City of Lott on the date of the offense. While on routine patrol, Officer Myers noticed an expired temporary license tag on the vehicle in front of him. The tag reflected an expiration date of about three months earlier. Officer Myers initiated a traffic stop; Appellant was the driver.

After Appellant stopped his vehicle, Officer Myers went up to the vehicle. Officer Myers advised Appellant of the reason for the stop, and he asked Appellant for his driver's license and proof of insurance. Appellant had a current temporary tag that he had by the front windshield; he showed it to Officer Myers. However, Appellant did not produce a driver's license. Further, he produced only an expired insurance certificate. Officer Myers was able to determine that Appellant had a valid driver's license.

According to Officer Myers, Appellant appeared to be "very nervous." For instance, after Officer Myers asked Appellant for his driver's license and proof of insurance, Appellant took all the cash out of his billfold and "literally threw it into the passenger seat next to him." Officer Myers observed that "[p]eople don't typically do that."

Officer Myers asked Appellant where he had come from and where he was going. Appellant told Officer Myers that he was going to see "Kay" and pointed to a house "a

couple hundred yards away." Although he claimed to have known Kay for many years, Appellant did not know Kay's last name; Officer Myers thought that to be "odd."

The house to which Appellant referred and the name "Kay" were not unfamiliar to Officer Myers. When he had first gone to work for the City of Lott Police Department, others had told Officer Myers that there were several ongoing narcotics investigations that involved that house and a person named "Kay."

When Officer Myers asked Appellant for proof of insurance, Appellant told Officer Myers that he had a current insurance certificate; Officer Myers gave Appellant time to look for it. While Appellant was looking for the current insurance certificate, Officer Myers went to his patrol unit. Appellant had given Officer Myers his name and date of birth. Officer Myers used that information to run a driver's license and warrant check; he also requested a criminal history check. He also called the Chief of Police and discussed the situation with him.

There were no outstanding warrants for Appellant. However, Officer Myers learned that Appellant had been arrested several times. One of those arrests was for possession of methamphetamine over four grams and under 200 grams. That was the same drug that was involved in the investigations directed at Kay and the house where she lived.

When Officer Myers returned to Appellant's vehicle, Appellant was still looking for the current insurance information.

Ultimately, Officer Myers asked Appellant to get out of his car and go with Officer Myers to the back of Appellant's vehicle. Appellant still had not furnished proof of current insurance coverage. Officer Myers showed Appellant the displayed expired temporary tag and asked Appellant for consent to search his vehicle. Appellant wanted to know why Officer Myers wanted to search the vehicle. Officer Myers testified that he told Appellant why. The record does not show what Officer Myers told him about the "why" for the search. Appellant told Officer Myers that he did not have a problem if Officer Myers would tell him the "why" behind the request.

According to Officer Myers, Appellant felt uncomfortable and did not want to consent to the search. Officer Myers told Appellant that that was fine and that he was within his rights to withhold consent. He then told Appellant that they would just wait there for a canine unit to arrive and "do a walk around the car."

At that point, Appellant told Officer Myers to just go ahead and search. Officer Myers testified that he told Appellant, "No, I don't want to coerce you. I don't want to do anything like that. We can wait. It's not a problem. We'll wait for the dog." Appellant insisted that Officer Myers proceed with the search. Officer Myers asked Appellant if he was sure and Appellant answered, "Yes." Officer Myers conducted the search, found narcotics in the vehicle, and arrested Appellant. Appellant had not yet furnished proof of current insurance coverage.

In a single issue, Appellant makes the claim that the trial court erred when it denied Appellant's motion to suppress. Appellant bases his claim upon his belief that Officer Myers unlawfully extended the traffic stop and that Appellant's consent to search was obtained during that unlawfully extended traffic stop. Therefore, Appellant maintains, his consent to search was not effective.

The Supreme Court's decision in *Rodriguez* informs our analysis of Appellant's complaint. *Rodriguez v. United States*, 575 U.S. 348 (2015). We learn from *Rodriguez* that a determination as to the responsible operation of vehicles on the road is a part of a traffic stop investigation. *Id*. at 355. "A seizure for a traffic violation justifies a police investigation of that violation." *Id.* at 354. "[T]he tolerable duration of police inquiries in the traffic-stop context" must be considered in light of the circumstances that surrounded the traffic violation that prompted the stop as well as related safety concerns. *Id.*

During an investigative traffic stop, an officer is entitled to make inquiries incident to the traffic stop, including checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id*. at 355. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id*. Additionally, an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop." *Id*. Nevertheless, an officer "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an

individual." *Id*. Texas follows the same approach. *Lerma v. State*, 543 S.W.3d 184, 193–94 (Tex. Crim. App. 2018) (citing *Kothe v. State*, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004)); *Davis v. State*, 947 S.W.2d 240, 245 n.6 (Tex. Crim. App. 1997).

As noted by the Court in *Rodriguez*, the task of ensuring that vehicles on the road are operated "responsibly" is a part of a traffic stop investigation. *Rodriguez* 575 U.S. at 355. Only after an investigating officer has determined that to be the case is the traffic stop investigation fully resolved. *Lerma*, 543 S.W.3d at 190–91; *Kothe*, 152 S.W.3d at 63–65. If an officer wishes to further detain a defendant after full resolution of the traffic stop, the officer must have reasonable suspicion to continue the detention.

Essentially, Appellant directs his argument on appeal at the question of whether Officer Myers had reasonable suspicion to detain him beyond the time necessary to complete the traffic stop investigation. Appellant maintains that he consented to a search of his vehicle during the time that Officer Myers had unlawfully extended the traffic stop. Therefore, he contends, his consent was not effective.[1]

The State argues that Appellant's consent was valid because the traffic investigation was ongoing at the time that Appellant consented to the search. We agree with the State. Because Appellant never furnished the proof of insurance that he claimed to have, although Officer Myers allowed him to continue to look for it, the traffic stop

---

[1] We note that the time stamp on footage from Officer Myers's body cam shows that Officer Myers noticed the expired tag at 22:24:33 and that at 22:40:42, Appellant told Officer Myers to go ahead and search the vehicle.

was not fully resolved.  Because the traffic stop was legitimate, and because the traffic stop investigation was never fully resolved, questions as to reasonable suspicion to continue the detention do not arise.  *See Martinez v. State*, No. 02-13-00610-CR, 2015 WL 392729, at *4 (Tex. App.—Fort Worth January 29, 2015, pet. ref'd) (mem. op., not designated for publication) ("Thus, *after the completion of the purposes of a legitimate traffic stop*, the officer must have reasonable suspicion to believe that additional criminal activity has occurred or is being committed to justify continued detention of the subject.") (emphasis added).

Here, although Appellant insisted that he had proof of current insurance, he never furnished it; he kept looking for it.  As we have noted, Appellant consented to the search of his vehicle.  At the time that Appellant consented, the legitimate inquiry related to financial responsibility had not been resolved.  In fact, the traffic stop was never fully resolved because Appellant never furnished proof that his vehicle was insured.  Appellant's argument that the purpose of the traffic stop was fully resolved prior to the time that he consented to a search of his vehicle is not well-taken.

"It is well-settled that one of the exceptions to the warrant and probable cause requirements of the Fourth Amendment is a search conducted pursuant to consent." *Vargas v. State*, 18 S.W.3d 247, 253 (Tex. App.—Waco  2000, pet. ref'd) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).  Under the Texas Constitution, the State must prove by clear and convincing evidence that consent to search was freely given. *State v.*

*Ibarra*, 953 S.W.2d 242, 244–45 (Tex. Crim. App. 1997). Consent is not voluntary if it is the result of duress or coercion, actual or implied. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). Whether the consent to search was in fact voluntary is to be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 227; *Harris v. State*, 994 S.W.2d 927, 930 (Tex. App. — Waco 1999, pet. ref'd).

As we have indicated, at the time that Appellant consented to a search of his vehicle, the traffic stop investigation was ongoing. Prior to the time that Appellant consented to the search, he appeared to "be uncomfortable" as to whether he wanted to consent. Officer Myers informed Appellant that it was his legal right not to consent and that they could just wait on a canine unit to "do a walk around the car." Appellant told Officer Myers "to just go ahead" with the search. Officer Myers told Appellant that he did not want to coerce Appellant, and that he "didn't want to do anything like that." Appellant again told Officer Myers to "go ahead and search the vehicle." Officer Myers asked Appellant whether he was sure, and Appellant said, "Yes." Only then did Officer Myers search Appellant's vehicle. At that time, Appellant still had not located and furnished Officer Myers with proof of current insurance.

We hold that Appellant's consent to search was freely and voluntarily given at a time when a traffic stop investigation was ongoing. We overrule Appellant's sole issue on appeal.

We affirm the judgment of the trial court.

JIM R. WRIGHT
Senior Chief Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Wright[2]
Affirmed
Opinion delivered and filed September 15, 2021
Do not publish
[CR25]



---

[2] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.